### TABLIN et ux. v. GWIN et al. *
### No. 14328.

Court of Appeal of Louisiana. Orleans.
Feb. 13, 1933.

*Rehearing denied March 13, 1933.

Spearing & McClendon, of New Orleans, for appellant.

Weiss, Yarrut & Stich, of New Orleans, for appellees.

### WESTERFIELD, Judge.

This is a suit for damages for physical injuries brought by Mrs. Charles Harry Tablin. Her husband, Charles Harry Tablin, intervened and claimed the amount of certain medical expenses and drug bills, which he incurred in connection with the injuries which his wife sustained.

The petition alleges that the Canal Bank & Trust Company engaged O. M. Gwin, doing business as O. M. Gwin Construction Company, to construct a bank and office building for it; that Gwin employed William Jackson & Company as subcontractor; that when the building had been practically completed Mrs. Tablin, on October 19, 1927, at 10:30 a. m., entered the building for the purpose of visiting the office of the Metropolitan Life Insurance Company, a tenant then occupying an office on the tenth floor; that as she crossed the corridor she tripped on a board, which had been placed as a covering for a number of metal pins, which, at that time, protruded from the marble floor about three-quarters of an inch; that the board had been insecurely placed across the pins in such a manner as to form a trap for the feet of the people using the corridor; and that her fall was due to the negligent placing of the board, which was the proximate cause of her injury.

As originally brought, the suit was against the Canal Bank & Trust Company, O. M. Gwin, and William Jackson & Co. in solido. The sheriff was unable to locate William Jackson & Co.; consequently, it has not been cited and that defendant is not now before the court.

O. M. Gwin filed an exception of no cause of action, which was sustained, and plaintiff appealed from that judgment to this court, where the appeal is now pending under No. 13,504 of the docket.[1] However, plaintiff, in this court, in argument and in brief, no longer seeks to hold Gwin responsible for the accident.

The Canal Bank & Trust Company, in its answer, admitted the ownership of the building and also admitted that plaintiff fell as she entered the building, but attributed her fall to her own carelessness. It also admitted the presence of the board which plaintiff alleged to have been the cause of her fall, averring that it had been installed as a tem-

[1] Appeal abandoned.

porary wooden sill to protect pedestrians against the hazard caused by the protruding pins. It especially pleaded contributory negligence and called O. M. Gwin in warranty, under the provisions of a written building contract between it and Gwin. Gwin excepted to the call in warranty on the ground that the bank was without right or cause of action and his exception was again sustained, the bank appealing therefrom. The case then proceeded to trial on its merits before a jury and resulted in a verdict in favor of plaintiff Mrs. Tablin in the sum of $1,500, and in favor of her husband, Charles Harry Tablin, in the sum of $2,000.

Plaintiff, at the time of her injury, being on her way to the office of a tenant of the defendant bank, was an invitee, to whom the defendant owed the duty of ordinary care. Huber v. American Drug Stores, 19 La. App. 430, 432, 140 So. 120. The case, upon the question of liability, turns upon whether the board, which caused Mrs. Tablin's fall, had been properly installed with a view to the safety of pedestrians using the corridor, of whom the record shows there were some 15,000 daily. The board had been in place about eighteen days, when Mrs. Tablin tripped and fell. It is claimed by the defendant that there was no reason for any one to trip over it because it was securely fastened at both ends by means of wedges driven in between the end of the board and the door jamb and additionally secured by pegs driven around each of the eight steel pins which it covered, so that it presented no greater hazard than that of an ordinary door sill. In addition, it is said that it was inspected at least nine times a day by the manager of the building, Mr. Lynch, and by the building superintendent, Mr. Robinet. Finally, in the alternative, it is pleaded that Mrs. Tablin was guilty of contributory negligence because, to quote counsel's words: "It was clearly her duty to avoid stepping on the board. She could easily have stepped over it without any unusual exercise of her physical or mental faculties. We as children early learned the folly of stepping on loose boards lying around, as it was only on such occasions that rusty nails punctured our feet."

The evidence on the question of the manner in which the board had been secured, from the defendant's viewpoint, is conflicting. Lynch, its building manager, stated that the board was only wedged at the ends and not at the pin holes, because the pins fitted tightly in the holes and there was, therefore, no necessity to wedge the holes.

Benson, one of the supervising architects in charge of the construction of the building, testified that both the pin holes and the ends had been wedged. This method of securing the board was necessary because, "if the board would warp or move, or become loos-

ened in its full width, it would be just as serious as the pins themselves and for that reason we were particularly careful to see that this board was held in place at all times."

Opposed to this testimony is that of William D. Melber, an employee of the Pittsburg Plate Glass Company of twelve years' standing, and, at the time, foreman in charge of the glazing work in the building. He stated that he saw Mrs. Tablin fall, saw the board tip, or rise up, and trip her, and that he had seen the board tip up on a number of occasions, and on three or four of which he caught people in the act of falling, who had tripped over it. He is corroborated by Mrs. Clara Eddington, who testified that she entered the Canal Bank Building a few days prior to the time Mrs. Tablin was injured and "it seemed that I stepped right solid on a board that went up and as I remember I almost went over and caught myself and made three or four steps, but I didn't fall."

In view of the testimony of Melber to the effect that the board had tilted on a number of occasions and that it did so when Mrs. Tablin attempted to walk on it because he saw it and saw her fall, and that of Mrs. Eddington to the effect that the board tilted under her weight, without causing her to fall, we cannot accept the view urged upon us by defendant concerning the security of the board, and our conclusion is that defendant was negligent in that respect.

We find no merit in the plea of contributory negligence based upon the fact that Mrs. Tablin stepped on the board instead of over it. One may assume that a doorsill, whether temporary or permanent, is secure.

The quantum, as approved by the jury, does not seem excessive. Mrs. Tablin suffered considerably. She was confined to her bed for months and, if the physicians who treated her prolonged her suffering by incompetency, as suggested by counsel, the record fails to establish this fact, whatever might have been the effect upon the amount of recovery. Mr. Tablin spent much money in the treatment of his wife for doctors, medicines, surgical appliances, et cetera. The record of these disbursements was condensed by agreement and the original vouchers dispensed with. We find no fault with the award in this regard.

The call in warranty, to which an exception of no cause of action was maintained, is based upon the following allegation in defendant's call:

"That under the provisions of the said written contract the said general contractor obligated himself to provide and maintain all passageways, guard fences, lights and other facilities for protection required by public authority or local conditions, and to protect the respondent from loss or damage resulting from the said general contractor's failure to so do."

The argument in behalf of the exception is that the cause of the accident which Mrs. Tablin experienced was not due to anything that Gwin, the general contractor, did or failed to do, but because of the failure of the Canal Bank & Trust Company to properly secure the board which its employees placed over the protruding pins. Therefore, it is said, the proximate cause of the accident was in no sense the result of any act of omission or commission on the part of Gwin. It is further objected on behalf of Gwin that, if there be liability, the action of the bank in calling Gwin in warranty is premature for the reason that the contract of indemnity is one which in its nature protects the creditor against actual loss and that since the bank had not, at the time the call was issued, sustained any loss, there was no obligation on the part of Gwin to pay the claim of a third person. In support of this latter proposition, reference is made to the case of Bain v. Arthur, 129 La. 143, 55 So. 743, in which our Supreme Court held, as expressed by the syllabus:

"The contract of indemnity is an original undertaking to make good a future loss or damage, and no action lies on such a contract until after the loss or damage has been sustained. In such a contract there is no obligation to pay a debt due to a third person, and therefore there is no personal warranty as defined in Code Prac. art. 379."

In view of the holding in the cited authority and without discussing the first point raised by the exception, we are of opinion that the action of the court, a qua, in maintaining the exception of no cause of action, as against the call in warranty by the Canal Bank & Trust Company, was correct.

For the reasons assigned the judgment appealed from is affirmed.

Affirmed.